UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-                                          No. 84-CR-63 (LAP)

HENRY BORELLI,                                     ORDER

                    Defendant.

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Henry Borelli's motion, pursuant to 18 U.S.C. § 3582(c)(1)(A), for compassionate release on account of the COVID-19 pandemic. (See dkt. no. 887 ("Mot.").) The Government opposed the motion, (see dkt. no. 894 ("Opp.")), and Defendant replied, (see dkt. no. 895 ("Reply")). Defendant also supplemented his filing on May 2. (See dkt. no. 896 ("Supp.").) For the reasons below, the motion is DENIED.

I. **Background**

Unless otherwise specified, the following facts are drawn from the Government's moving papers, which, importantly, Defendant does not dispute.[1]

---

[1] (See Opp. At 1-3.) The Government represents that these facts are drawn from: (1) the Court of Appeals' opinion affirming in part and reversing in part Defendant's convictions, see United States v. Gaggi, 811 F.2d 47 (2d Cir. 1987); (2) the transcript of the sentencing hearing before Judge Duffy; and (3) from the Government's briefing opposing Defendant's appeals of collateral attacks on his sentence, (see Brief for the United States, Borelli v. United States, No. 94-2643 (2d Cir. Feb. 22, 1995); Brief for the United States, United States v. Borelli, No. 96-1173 (2d Cir. May 28, 1996)).

1

Defendant was convicted, following a nearly six-month jury trial, of (1) fifteen counts of transporting stolen property in interstate commerce, in violation of 18 U.S.C. § 2314, and (2) one count of conspiracy to deprive citizens of their civil rights in connection with two murders, in violation of 18 U.S.C. § 241.  The § 2314 charges arose from a conspiracy by Borelli and his accomplices--"a malevolent group of defendants, in the accomplishment of whose violent conspiracies no one was suffered to stand in the way"--"to ship late-model automobiles stolen on the streets of New York to Kuwait and other parts of the Middle East, Puerto Rico and other states in the United States." Gaggi, 811 F.2d at 49-50.

That stolen-car operation reached its zenith in the mid-1970s, when Defendant and others were wholesale shipping renumbered cars to Kuwait.  Defendant was involved in the operation from its early stages and assumed a managerial role in its activities.  Among other things, Defendant (1) supervised the cleaning and renumbering of the stolen cars, (2) set up a shell corporation and opened a bank account for the venture, (3) contracted to move the cars overseas from the crew's garage, and (4) received a share of the operation's thousands of dollars in weekly profits.

In addition, Defendant and his co-conspirators plotted to, and in fact did, murder Ronald Falcaro and Khaled Fahd Darwish

2

Daoud, legitimate competitors whom the operation viewed as threats to report them to the authorities. Defendant and three accomplices lured Falcaro and Daoud to a garage under false pretext. Once Falcaro and Daoud were inside, the doors were closed behind them, and gunshots were fired. A cooperating witness testified at trial that Defendant and one accomplice--*i.e.*, the shooters--stood over Falcaro's and Daoud's lifeless bodies. Defendant's co-conspirators then dismembered the bodies and transported them to the city dump, while Defendant transported their car to a junkyard for crushing. Defendant received part of the bounty a co-defendant paid for the murders.

Defendant was sentenced by Judge Kevin Duffy on April 9, 1986.[2] Judge Duffy sentenced Defendant to life imprisonment for the murders as well as consecutive ten-year sentences for each of the fifteen stolen-car counts. At the sentencing hearing, Judge Duffy made the following observation:

> "You have been convicted of being what is generally called a contract killer. The judgment of this court is that on [the murder count] you will be remanded to the custody of the Attorney General for the rest of your life and that on the [fifteen counts of transporting stolen goods in interstate commerce], that you be sentenced to ten years imprisonment. I am recommending against parole. I want to make sure that

---

[2] Because Defendant's crimes were committed before the effective date of the Sentencing Reform Act of 1984, the Guidelines did not apply to his sentence. See United States v. Argitakos, 862 F.2d 423, 424-25 (2d Cir. 1988) (per curiam).

3

>      the parole board knows it. The sentence of years is
>      to be consecutive to the life sentence."

Judge Duffy added that, because the jury's conviction of Borelli as a contract killer was overwhelmingly supported by the evidence, "things would have to change mightily before I could see any justification by anyone, including the parole board, to return you to any kind of access to the public."

On direct appeal, the Court of Appeals reversed Defendant's murder conviction because the Government had failed to prove that the victims were United States citizens, which the Court of Appeals held to be a necessary element to sustain a conviction under 18 U.S.C. § 241. See Gaggi, 811 F.2d at 53. Importantly, however, the Court of Appeals affirmed the defendant's 150-year sentence on the stolen-car counts. See id. at 62. The Court of Appeals has repeatedly rejected Borelli's efforts to set aside that sentence.[3]

The instant application for compassionate release is Defendant's latest motion for relief from his sentence. Defendant is currently housed at FCI Gilmer in West Virginia, (see Reply at 2), and he is projected to be eligible for release on October 15, 2083, (see Mot. at 14 ("Ex. A")). Defendant is 72 years old and suffers from diabetes, hypertension and heart

---

[3] See, e.g., United States v. Dinome, 1996 WL 518508, at *2 (2d Cir. Sept. 13, 1996) (unpublished); Borelli v. United States, 60 F.3d 810 (2d Cir. 1995) (unpublished table decision).

4

disease, and cataracts. (See Mot. at 2; Opp. at 3 & n.2.) As of March 17, 2021, Defendant has been fully vaccinated against COVID-19, (see dkt. no. 894-1), as have 156 other inmates at FCI Gilmer, (see Opp. at 3).

## II. Applicable Law

Defendant moves for a reduction of his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (2018).[4] Under that provision, the Court may reduce Defendant's sentence if it finds that (1) "extraordinary and compelling reasons warrant such a reduction" and (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The relevant Guidelines policy statement--Section 1B1.13--counsels

---

[4] A defendant may bring such motion after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

The timing of Defendant's request is somewhat unclear. Defendant reports that he made a motion to the BOP for compassionate release on November 20, 2020, (see Mot. at 6), but the Government reports that neither FCI Gilmer nor the BOP has a record of that request. (See Opp. at 5.) However, Mr. Borelli thereafter made another request for compassionate release to the Warden at FCI Gilmer on March 27, 2021, (see Supp. at 1), which was rejected on April 12, 2021, (see id. at 3.) In any event, the Court finds that latter rejection sufficient to permit review of the merits of Defendant's application.

5

that a reduction also is not proper unless "[t]he defendant is not a danger to the safety of any other person or to the community."[5]

With respect to the "extraordinary and compelling reasons" requirement, the application notes to U.S.S.G § 1B1.13 provide three instances where such reasons may exist: (1) the Defendant has a terminal illness or serious medical condition that substantially diminishes his ability care for himself; (2) the Defendant is at least 65 years old, has served 10 years or 75 percent of his sentence, and is experiencing a serious age-related decline in health; or (3) the Defendant's family circumstances have changed such that the Defendant is the only available caregiver for a minor child or incapacitated spouse.[6]

Under the First Step Act, the Court may exercise its "discretion in determining what are extraordinary circumstances." United States v. Brooker, 976 F.3d 228, 234 (2d Cir. 2020). But a court's finding such circumstances merely permits a defendant's release--it does not mandate it. See,

---

[5] U.S.S.G. § 1B1.13; see also United States v. Jordan, No. 1:19-CR-478-GHW, 2020 WL 4195353, at *2 (S.D.N.Y. July 16, 2020) ("The relevant policy statement is U.S.S.G. § 1B1.13.").

[6] U.S.S.G. § 1B1.13 app. n.1(A)–(C). The application notes also allow a catchall condition where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the Defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id. at app. n.1(D).

e.g., United States v. Ebbers, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020); United States v. Israel, No. 05-CR-1039 (CM), 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019). Ultimately, "[t]he defendant has the burden to show he is entitled to a sentence reduction." United States v. Lisi, 440 F. Supp. 3d 246, 249 (S.D.N.Y. 2020).

Moreover, even if the defendant establishes extraordinary or compelling circumstances, the Court must still consider the § 3553(a) sentencing factors "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Those factors include, inter alia, "(1) the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; and (3) "the need for the sentence imposed ... to protect the public from further crimes of the defendant." Id. § 3553(a)(1)-(2).

### III. Discussion

In response to the Government's arguments that Defendant's vaccination precludes him from demonstrating "extraordinary and compelling circumstances warranting release," Defendant acknowledges that "the Pfizer vaccine provides protection to [him] against severe illness, if he were to contract the virus, but according to the CDC, he remains at risk of contracting the

7

virus." (Reply at 7.) He argues that the Pfizer vaccine "does not prevent infection, but lessens the effect, if infected." (Id.) He concludes that his "voluntary vaccination only lessons [sic] his risks and does nothing to eliminate those risks." (Id. at 8.) But eliminating all risk is not the test for compassionate release. Defendant's complete vaccination, which he admits provides him protection from severe illness, is certainly relevant to the inquiry.

Nevertheless, Defendant also contends that his age and other health issues, when coupled with the pandemic, qualify as "extraordinary and compelling circumstances warranting release." (See Mot. at 2-3; Reply at 8-12.) The Court disagrees. While not binding on the Court, Application Note 1(B) to U.S.S.G. Section 1B1.13 suggests that extraordinary and compelling reasons exist when the defendant is: (i) at least 65 years old; (ii) experiencing a serious deterioration in physical or mental health; and (iii) has served at least ten years of imprisonment or 75 percent of his sentence, whichever is less. Defendant is indeed over 65 and has served ten years, yet he does not report a "serious" deterioration in physical or mental health, especially when compared to some other defendants.[7] Indeed,

---

[7] See, e.g., United States v. Sabir, 481 F. Supp. 3d 270, 275 (S.D.N.Y. 2020) (holding that defendant with prostate cancer, asthma, and prediabetes had not established "extraordinary and compelling circumstances").

8

Defendant has offered no indication that his medical conditions cannot be managed--or, for that matter, are not already well-controlled--through BOP-provided medical care.  When considered alongside the fact that he is fully vaccinated against COVID-19, the Court concludes that Defendant has not demonstrated extraordinary and compelling circumstances warranting his release.

Moreover, even if Defendant had demonstrated extraordinary and compelling circumstances, the Court would not exercise its discretion to release him because doing so would contravene the § 3553(a) factors.  Judge Duffy made crystal clear at sentencing that those factors justified the maximum possible sentence against Defendant and that "things would have to change mightily" before there could be any justification for release.  Judge Duffy's analysis of those factors retains its force even in light of the Court of Appeal's reversal of Defendant's conviction on the murder count, which was premised only on the Government's failure to prove that Defendant's victims were United States citizens.  See Gaggi, 811 F.2d at 53.  The fact remains that Defendant conspired to murder two people and engaged in an organized, violent conspiracy to steal, transport, and sell luxury vehicles for profit.  To release him at this point would fail to provide just punishment or to

promote respect for the law.  Moreover, such release would also undermine the goals of both general and specific deterrence.

### IV. Conclusion

For the reasons set out above, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) [dkt. no. 887] is DENIED.  The Clerk of the Court shall (1) close the open motion and (2) mail a copy of this order to Defendant.

**SO ORDERED.**

Dated:    June 2, 2021
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge